# The Milsom Rendering & Fertilizer Co., Appellant, v. Wm. J. Kelly.

*Foreign corporations—Doing business within the state—Act of 1874—Nonsuit.*

Where a foreign corporation appoints a local agent within the state, consigns goods to him in carload lots for sale on commission, it is doing business within the meaning and purview of the Act of April 22, 1874, P. L. 108, and where there had been a failure to comply with the provisions of that act a nonsuit was properly entered in a suit brought by the company to enforce its civil contracts.

Argued May 10, 1899. Appeal, No. 218, April T., 1899, by plaintiff, from judgment of C. P. Armstrong Co., Dec. T., 1897, No. 182, directing a compulsory nonsuit. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER. J.

Rule to take off compulsory nonsuit. Before RAYBURN, P. J.

It appears from the record and evidence that the plaintiff company was a foreign corporation; that it had a resident agent within the county of Armstrong, Pennsylvania, and that it shipped the product of its manufactory into the said county, and a portion of the same was sold by the agent to William J. Kelly, defendant; that an action of assumpsit for $107.52 was brought by the plaintiff on appeal from a judgment of the magistrate. The court directed a compulsory nonsuit to be entered which it on motion subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in discharging rule to take off compulsory nonsuit.

*R. L. Ralston*, with him *Austin Clark*, for appellant.—The plaintiff was not "doing business" in this state within the meaning of this act of assembly.

It was not pretended at the trial of this case that the plaintiff had any of its capital invested in this state or conducted any part of its manufacturing operations here.

The act has been very fully discussed and construed in the case of Blakeslee Manufacturing Company v. Hilton, 5 Pa. Superior Ct. 184, 189.

In the opinion filed by the court below, Thorne v. Insurance Company, 80 Pa. 15 is cited. This is an insurance case, and is a construction put upon an Act of Assembly of April 11, 1868, P. L. 83, relating to foreign insurance companies, with which in this case we have nothing to do.

The case of The Citizens' Trust and Surety Company v. McCanna & Fraser, 6 Dist. Rep. 25, which is also cited by the court below in its opinion, is a decision of the United States circuit court of appeals, and this decision is based upon the construction of the Act of April 22, 1874, P. L. 108, as given in Lasher v. Stimson, 145 Pa. 30. The facts in this case differ from those we have cited above. The Sudsena Manufacturing Company, the corporation complained of, and of which H. D. Stimson was president, was incorporated under the law of the state of New Jersey, but was actually engaged in the manufacture and sale of soap or washing compound in this state. It

had brought its capital into this state and was exercising its corporate franchises here, and the decision is entirely consistent with the cases cited above.

*H. N. Snyder*, for appellee.—There can be no doubt of the constitutional power of the legislature to prescribe the conditions under which a foreign corporation shall transact business in this state and the manner in which its agents shall be qualified before entering upon their duties: Johnson v. Hulings, 103 Pa. 498.

This is not the case of a foreign person or corporation soliciting orders or making sales by sample, and sending the orders to the home office to be filled and shipped directly to the party buying, and the authorities cited by appellant do not apply.

Here an agency was established in the state, the plaintiff company shipped its goods into the state to the agent, Blose, where they were stored in the company's warehouse, and by the agent sold and delivered to the defendant. The entire transaction was between Blose and Kelly.

Kelly was not informed that the goods purchased were not the property of Blose and knew nothing to the contrary until a few days before suit was brought.

The purpose of bringing this suit in the name of the plaintiff company was to avoid the equitable defense which Kelly had against Blose.

OPINION BY BEAVER, J., July 28, 1899:

The plaintiff, a foreign corporation, employed resident agents within the commonwealth to sell the products of its manufacture. A sale was made by one of these agents to the defendant, who, alleging that he had no knowledge that he was purchasing from the corporation but supposed that the purchase was made from the agent as an individual, defended upon the ground that the corporation was not authorized to do business in Pennsylvania, because of its failure to comply with the provisions of the Act of April 22, 1874, P. L. 108. Upon the trial of the cause, the court below granted a nonsuit and, after argument upon a motion to take off the nonsuit, refused so to do, that refusal being the only error assigned. The character, scope and effect of this act of assembly was discussed with some care by

our late Brother WICKHAM, in Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184, in which it was held that a foreign corporation, receiving orders for goods and delivering them to the purchaser at the place of manufacture outside the state, was not bound to comply with the provisions of the act of 1874, supra. In commenting upon the affidavit of defense filed in that case, it was said: "But it is not alleged that McElwaine was a permanent or resident agent; that he had an office, warehouse, place of business or stock of goods in Bradford or that he managed, controlled or used any of the plaintiff's corporate capital or property in Pennsylvania." If such allegations had been made, the affidavit would doubtless have been held sufficient.

It is to be observed that the act of 1874, supra, imposes no tax upon foreign corporations doing business within the limits of this commonwealth nor does it discriminate in any way against such corporations or the trade in which they engage. The apparent object is to put such corporations upon the same footing as those incorporated by the laws of this commonwealth. They are required by the terms of the act "to file in the office of the secretary of the commonwealth a statement under the seal of said corporation and signed by the president or secretary thereof, showing the title and object of said corporation, the location of its office or offices and the name or names of its authorized agent or agents therein, and the certificate of the secretary of the commonwealth, under the seal of the commonwealth, with the filing of such statement, shall be preserved for public inspection by each of said agents in each and every of said offices." All corporations chartered by the commonwealth have the information provided in the second section of the act quoted above, filed in the office of the secretary of the commonwealth. The object of the act may have been, as stated in Kilgore v. Smith, 122 Pa. 48, to bring corporations employing their capital in this state and doing business here within the taxing power of the commonwealth, or the object may have been to put foreign corporations upon an equality with those of our own commonwealth in respect to the information required to be given and to give our citizens the knowledge which would enable them to enforce their rights against such a corporation, in case it became necessary so to do. We are not now dealing, however, with the ultimate object of the legislature in passing this act. If it

was for the purpose of taxing foreign corporations, the power
or authority to do so must be determined, when the taxes are
levied.    Whatever the object, it cannot be reasonably claimed
we think that the act itself offends against the provisions of the
federal constitution in regard to the regulation of commerce
among the states.    In Robbins v. Shelby Taxing District, 120
U. S. 489, the imposition of taxes upon all property within the
state mingling with and forming a part of the great mass of
property therein, is distinctly recognized as legitimately within
the province of state laws.    It is not necessary to pursue this
subject, however, for the act itself does not disclose any inten-
tion on the part of the legislature to levy any taxes whatever.
It simply prescribes certain duties upon foreign corporations as
a condition precedent to their doing business within the com-
monwealth, these duties being in no sense different from those
imposed upon corporations chartered under our own laws.

It is claimed by the plaintiff that the business done by it
in Pennsylvania comes within the class recognized in Blakes-
lee Mfg. Co. v. Hilton, supra, as legitimate and not governed
by the act of 1874.    The character of the business done by
the plaintiff and authorized by its agent, and the scope of his
agency, are best determined by the agreement concerning such
agency given in evidence by the plaintiff.    Two such contracts
were given in evidence, the one dated February 27, 1894, and
the other February 8, 1895, which are practically similar in
their provisions.    From the latter we quote: "This contract
witnesseth that the Milsom Rendering & Fertilizer Co. does
hereby constitute Albert Blose agent for the town of Plum-
creek, Armstrong county, Pa., delivered in car lots, for the
sale on commission of said company's fertilizers in said town."
"All proceeds of sales to remain the exclusive property of the
Milsom Rendering & Fertilizer Co., who will adjust and pay
commissions, when cash is realized on sales; all goods hold-
ing over unsold remaining the property of the Milsom Ren-
dering & Fertilizer Co.; agent herein agreeing to see that
said unsold goods are properly stored in a dry, clean place,
free of charge to the company; agent also agrees to give
a correct report of all sales made to the company, when re-
quested; also to allow company's authorized agent to inspect
and count sacks, whenever necessary."    From this it appears

that the delivery was not to the purchaser at the place where the goods were manufactured outside the state, but that the delivery was made in carload lots to the agent; that the manufactured product at the time of the delivery belonged to the company and continued to be its property until sold; that the proceeds remained the exclusive property of the company and, if unsold, was still in its ownership and control. Not only so, but provision is made for inspection by authorized agents and an inventory of what remains on hand.

There is no escaping the conclusion that the company employed a portion of its capital within the limits of this commonwealth; that its property was shipped here as such; remained as such liable to be sold or to be returned, as it might determine. It was, therefore, doing business in this commonwealth within the meaning and purview of the act of 1874, supra, and was bound to comply with the provisions of that act in doing such business. Having failed to comply with our laws, it could not appeal to them to enforce its civil contracts. The nonsuit was properly granted by the court below, and the discharge of the rule to show cause why it should not be taken off was not error.

Judgment affirmed.