## M. S. COHN GRAVEL CO. v. SOUTHERN SURETY CO.

No. 17388.    Opinion Filed Dec. 6, 1927.

(Syllabus.)

**1. Corporations — Foreign Corporations— Right to Sue on Contracts Made with Citizens Prior to Compliance with Domestication Statutes.**

Contracts made between foreign corporations and citizens of this state prior to a compliance with the requirements of the domestication statutes are void only at the option of the citizens of the state who were parties thereto, and when such a foreign corporation complies with the statutory requirements of chapter 34, art. 10, C. O. S. 1921, although after the making of the contract, it may maintain an action on said contract subject to the defense given to the

citizens of the state by section 5435, C. O. S. 1921.

**2. Principal and Surety—Defense not Available to Surety if Waived by Principal or Principal Estopped.**

A surety can make no defense which its principal waives, or which the principal is precluded from making by reason of his conduct.

Commissioners' Opinion, Division No. 2.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by M. S. Cohn Gravel Company against Southern Surety Company. Judgment for defendant, and plaintiff appeals. Reversed.

Philos S. Jones and Monk & McSherry, for plaintiff in error.

Andrews & Anton, for defendant in error.

JEFFREY, C. This appeal involves a contract between a foreign corporation and a citizen of this state. One E. L. Terry secured a contract with the state of Oklahoma on or about the 17th day of July, 1923, to build and improve certain sections of highway in Latimer county, Okla. He executed a statutory contractor's bond for the payment of all material and labor in the building of said highway, and the defendant, the Southern Surety Company, signed said bond as surety. Shortly after securing the above-mentioned contract, Terry entered into a verbal contract with M. S. Cohn Gravel Company, plaintiff herein, whereby said plaintiff was to furnish gravel from its pits in Oklahoma for the building of said highway. Plaintiff was incorporated under the laws of the state of Arkansas, and at the time it made its contract with Terry, it was engaged in business in this state, but had not complied with the laws of Oklahoma relative to foreign corporations before doing business in this state, but did comply with the provisions of said law three days prior to the bringing of this suit.

Plaintiff by its petition alleged the oral contract; that it sold and delivered a large quantity of gravel pursuant to said contract; and that E. L. Terry owed a balance for gravel sold and delivered in the sum of $5,622.40. The suit was brought against the Southern Surety Company on said bond, and did not include the principal, E. L. Terry. Defendant answered by a general denial, and also alleged that plaintiff was a foreign corporation at the time of making said contract, and at the time of delivery of said gravel, and had not complied with the laws of the state of Oklahoma requiring foreign corporations to domesticate before doing business in this state until on the 1st day of October, 1924.

Plaintiff then filed a reply by which it denied the allegations of new matter pleaded in said answer, and further alleged that defendant was estopped to defend on the ground that the contract between plaintiff and E. L. Terry was void for the reason that E. L. Terry, principal on said bond, had validated said contract by filing suit thereon against plaintiff in the district court of Latimer county, on May 7, 1925, whereby said Terry claimed all the profits provided by the terms of said contract, or to which he may be entitled under said contract by operation of law. A copy of Terry's petition in said suit was attached to plaintiff's reply. A demurrer was sustained to the latter part of plaintiff's reply. At the trial the parties filed written stipulations as to the facts. These stipulations recite that the gravel sold and delivered was produced in the state of Oklahoma, and the routes over which it was delivered were wholly within the state of Oklahoma; that on no occasion on which gravel was delivered was plaintiff licensed to do business in the state of Oklahoma, and had in no manner complied with the domestication statutes of this state. Defendant filed a motion for judgment on the pleadings and stipulations, which was sustained, and judgment rendered for defendant. Pursuant to an understanding the court expressly excluded from its judgment an adjudication of the state of accounts as between plaintiff and Terry.

The principal question presented by this appeal is, Is the contract between plaintiff and E. L. Terry for the sale and delivery of gravel void or merely voidable? Section 5432, C. O. S. 1921, provides that no foreign corporation, except created solely for religious or charitable purposes, shall transact business within this state until it shall have filed in the office of the Secretary of the State a certified copy of its articles of incorporation, and shall have paid the fees required by law. Section 5433 requires that a resident agent shall be appointed, who resides at the state capital, upon whom service of process may be made in any action in which said corporation shall be a party. Section 5435 is as follows:

"If any such foreign corporation shall fail to comply with the foregoing provisions of this article, all its contracts with citizens of this state, entered into after the approval of this article, shall be void as to the cor-

poration, and no court of this state shall enforce the same in favor of the corporation."

Section 5438 is as follows:

"No foreign corporation, as above defined, which shall fail to comply with this article, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort."

On this question the authorities appear to be in a state of irreconcilable conflict. The question is entirely one of statutory construction. This court has not passed squarely on the question with which we have to deal, but these sections of the statutes, and similar ones, have heretofore been considered by the court in passing upon similar questions. If these provisions of the law were enacted for the public good, contracts made by foreign corporations without having complied with such provisions are void; but if they were enacted for the purpose of protecting private rights of the parties interested, such contracts are void only when declared so by the citizen with whom the contract is made. Schurtz v. City of Grand Rapids, 199 Mich. 20, 165 N. W. 766; Mutual Benefit Life Insurance Co. v. Winne, 20 Mont. 30, 49 Pac. 446.

Prior to statehood sections 3, 4 and 5 of chapter 379, 31 Statutes at Large, and of the Act of Congress, February 18, 1901, were in force in the Indian Territory. The first two sections made similar requirements to those provided by sections 5432 and 5433, of foreign corporations before transacting business within the Territory, and section 5 is as follows:

"That if any foreign corporation shall fail to comply with the provisions of the foregoing sections, all its contracts with citizens and residents of the Indian Territory shall be void as to the corporation, and no United States court in the Indian Territory shall enforce the same in favor of the corporation."

It will be noted that this section is identical with section 5435, supra, except it was enacted for Indian Territory, and the United States Court was named instead of the state courts. In the case of Verdigris River Land Co. v. Stanfield, 25 Okla. 265, 105 Pac. 337, this court discussed these provisions of the law in connection with certain questions there presented. In that case a foreign corporation, without complying with the domestication statutes, purchased land throughout the territory through its officers and agents. The corporation brought an action in the

district court of Craig county against its agents for an accounting of moneys furnished for the purchase of land. The defendants contended that the corporation could not maintain its suit, having transacted business in violation of the provisions above referred to. The court referred to the authorities relied on by this defendant, and said that they were distinguishable from the case under consideration; that the authorities laid down the principle that, when a contract is illegal and prohibited by law, no action can be maintained upon it in law or equity, either to enforce its obligations or secure its fruits to either party. It is true that this case went off on the theory that the contract between plaintiff and the defendant determined the rights between the parties, and not the contract between the corporation and the citizens of the territory; but in referring to the transaction between the corporation and the citizens of the territory, the court said:

"These transactions were not void except at the option of the citizens and residents of the Indian Territory with whom they were made, and, as far as the record shows in this case, they are not complaining."

That case was cited in the case of Kibby v. Cubie, Heimann & Co., 41 Okla. 116, 137 Pac. 352, as announcing the rule that the contracts of foreign corporations, not having complied with the domestication statutes, were not void except at the option of the citizens and residents of Indian Territory. Our attention is called to the case of Goodner Krumm Co. v. J. L. Owens Mfg. Co., 51 Okla. 376, 152 Pac. 86, as supporting defendant's theory. In that case, the foreign corporation never complied with the law before or after its cause of action arose. The question of the validity of the contract was not denied, but it was held that since the corporation had not complied with the law, it could not maintain its suit under section 5438.

Practically every state in the Union requires that foreign corporations shall comply with certain requirements before transacting business within that state. These provisions are very similar in every state. The penalty sections which correspond to our section 5435 vary considerably. In Montana the penalty section provides that if a foreign corporation fails to domesticate, as required by law, all acts and contracts made by it during the time it neglects to comply therewith shall be void and invalid as to such corporations. This section also provides that every foreign corporation that fails to com-

ply with the law shall forfeit to the people $10 per day for every day engaged in business before complying with said law. In a suit by a noncomplying foreign corporation on a note against a citizen of the state of Montana, in the case of Mutual Benefit Life Insurance Co. v. Winne, supra, the court said:

"It is not the policy of the statute to prevent foreign corporations from doing business within this state. * * * The statute does not make this contract absolutely void or a nullity, nor does it attempt to prevent contracts between foreign corporations and persons within the state."

Again, the court said:

"Whenever the act done takes effect as to some purposes, and is void as to persons who have an interest in impeaching it, the act is not a nullity, and, therefore, in a legal sense, is not utterly void, but merely voidable. Another test of a void act or deed is that every stranger may take advantage of it, but not of a voidable one."

The court, in distinguishing those cases which hold that the contracts of foreign corporations are void, said:

"These decisions rest upon firm ground. They decide that if there is anything immoral in the contract itself, or even in some instances where it is expressly prohibited by statute, there can be no legal remedies; but they do not decide that contracts founded on mertitorious consideration although made by foreign corporation in contravention of the statutes are nullities."

The penalty section in the state of Florida provides that every contract made by, or on behalf of, any foreign corporation, before it shall have complied with the provisions of this act, shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them. In the case of Commercial National Bank v. Jordan, 71 Fla. 566, 71 South 760, the court held that in a suit by the indorsee of a promissory note made payable to a foreign corporation prior to its domestication, under the above statute, such a contract was merely voidable and not void. It was there considered that the words "on its behalf and on behalf of its assigns" qualified and restricted the word "void," and gave it a different meaning from what it would have had standing alone.

In the case of Schurtz v. City of Grand Rapids, supra, an action was brought against the city for attorneys' fees. It was admitted that the contract came within the act, which reads as follows:

"Any contract, purchase, sale or bid made in violation of the provisions of this section shall be absolutely void and of no force or effect against the city, or any board or department thereof including the board of education." Loc. Laws. Mich. 1905, No. 593, tit. 16, sec. 18.

It was there held that the added words "against the city or any board or department thereof including the board of education," clearly limit and qualify the effect of the word "void," and further said:

"Having specified against whom such contracts shall be considered absolutely void, there is no room for the contention that it was intended to declare them void as against any other party. And when a situation arises in which a contract is void as to one party and in force as to the other, is not the exact situation of a voidable contract present?"

Our investigation of the authorities discloses that, in practically every case where the contract of a foreign corporation entered into with a citizen of the state before domestication was held to be void, such states had statutory provisions making it a misdemeanor for a foreign corporation to engage in business without having complied with the statutory requirements, or provisions declaring it shall be unlawful to engage in business without first complying with the law. We have no such provision. There is nothing illegal or immoral in the transacting of business in this state by a foreign corporation without having complied with the statutory requirements. It is not the policy of the statutes of this state to exclude foreign corporations from transacting business in this state. Obviously, the primary purpose of these provisions is to protect citizens and residents of Oklahoma in transacting business with foreign corporations. It was intended that they should bring themselves within the law, so that service of process could be had upon them, and give such citizens who desire to deal with such corporations an opportunity to ascertain from the public records the financial standing of the corporation, and the names of its officers. Verdigris River Land Co. v. Stanfield, supra. Before a foreign corporation is authorized to do business in this state and enjoy the rights and privileges of domestic corporations, it must pay the fees required by law. But by reason of this requirement, the act could not be said to be a revenue act. The requirement is merely incidental to the main purpose.

The words "void" and "voidable" are frequently used indiscriminately. And frequently where the word "void" is used in a statute or judicial opinion, it is necessary to

resort to the subject-matter or context to determine precisely the meaning intended to import. Capps v. Hensley, 23 Okla. 311, 100 Pac. 515. Had section 5435 concluded by saying that such contracts "shall be void," without adding "as to the corporation," there could have been no doubt that the Legislature meant that such contracts would, in legal effect, be nullities, and no rights could grow out of them. This latter expression, "as to the corporation," limits and restricts the meaning of the word "void," so that it has no application in its correct meaning to such contracts in so far as the rights of citizens of the state, which may arise thereunder, are concerned. The Legislature having specified against whom such contracts should be void, there is no room for the contention that they should be void as to any other party. This presents the exact situation of a voidable contract. A void contract, in the strict legal sense, is a nullity, and no parties thereto can enforce any rights claimed thereunder. The concluding expression, "and no court of this state shall enforce the same in favor of the corporation," was also in the old Indian Territorial Act, and was considered by this court in Verdigris River Land Co. v. Stanfield . supra. In view of the primary purpose of these statutes, this expression adds nothing to the former declarations in this section. Section 5438, supra, provides that no foreign corporation which shall fail to comply with this article can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand. whether arising out of contract or tort. If the contracts referred to in the former section were intended to be treated as utterly void, why was this section adopted at the same time in so far as it relates to contracts? That construction would raise the bars against a foreign corporation's entering the courts to enforce a contract made before it had domesticated more effectively than the language of the latter section would justify.

Section 5435 gives every citizen, who contracts with a foreign corporation prior to the corporation's having complied with the law, and received a permit to transact business within this state, a complete defense against the enforcement of such contract, if he desires to claim it. But if the contract is founded on a meritorious consideration, as in this case, and the citizen of the state does not repudiate the contract and claim the defense given him by the statute, but, on the contrary, both parties invoke the con-

tract as the basis of their rights and obligations, who should be permitted to plead the statute? The answer is, "No one." Under the latter section, the corporation must domesticate before it can bring its suit, and even then the citizen has a perfect defense against the enforcement of the contract by invoking the statute. This construction fulfills the purpose of the statute, and is in accord with many respectable authorities.

E. L. Terry, the other party to the contract, did not exercise his option to avoid it. On the contrary, after the case at bar was filed, and before it was at issue. he sued plaintiff in the district court of Latimer county invoking said contract. By his petition, a copy of which is attached to plaintiff's reply, and admitted in the stipulations to be a true and correct copy of the original, he sets up the terms of the contract, alleges its breach, and claims all the benefits under it. This conduct, we think, constitutes a waiver of Terry's rights to plead the statute, and he would now be estopped to avoid the contract. Terry, the principal on the bond, having waived his remedy to avoid the contract, is the defendant, the surety, entitled to avail itself of this defense? In view of the purpose of these provisions of the statutes, we think not. In the case of D. M. Osborne & Co. v. Shilling (Kan.) 88 Pac. 258, it was held that the provisions of the statute could not be waived. But this case, as well as others cited by counsel for defendant, deals with statutory provisions different from ours. It was held in the last-named case that the provisions there under consideration were enacted for the benefit of the general public, could not be waived by an individual citizen, and therefore estoppel would not apply. The rule as stated in 21 R. C. L. 999, is as follows:

"The sureties can ordinarily make no defense that could not be made by their principal. The measure of his responsibility is the measure of theirs, and any act of the principal which estops him from setting up a defense personal to himself operates equally against his surety."

The case of Van Kirk v. Adler 111 Ala. 104, 20 South. 336, lays down the rule as follows:

"A surety can make no defense which the principal waives, or by his conduct precludes himself from making."

See, also, Boone County v. Jones, 54 Iowa, 699, 2 N. W. 987; McCabe v. Raney, 32 Ind. 309; Point Pleasant v. Greenlee, 63 W. Va. 207, 60 S. E. 601.

Counsel for defendant assert that the de-

fendant asked leave to have E L. Terry made a party defendant, and that Terry himself asked leave to be made a party defendant, and that because of the opposition of plaintiff, both requests were denied. No cross-appeal has been filed, and the question of whether the trial court erred in this particular is not before this court.

The trial court therefore committed error in sustaining the demurrer to that portion of plaintiff's reply, and in rendering judgment in favor of defendant on the pleadings and stipulations.

The judgment of the trial court is therefore reversed, and the cause remanded for a trial on the merits as to the amount due plaintiff for gravel sold and delivered.

BENNETT, HERR, DIFFENDAFFER, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 14a C. J. 1295, §4002 (Anno); p. 1304, §4007 (Anno); 12 R. C. L. p. 92; 6 R. C. L. Supp. p. 1297. (2) 32 Cyc. p. 149 (Anno); 21 R. C. L. p. 999.