## W. E. TITUS RADIO CORPORATION v. RICHARDS.

No. 30102.   Jan. 27, 1942.

*121 P. 2d 579.*

Bill Montgomery, of Idabel, for plaintiff in error.

Bascom Coker, of Idabel, for defendant in error.

BAYLESS, J.   The W. E. Titus Radio Corporation, a corporation, brought suit

in the district court of McCurtain county, Okla., against T. N. Richards, by filing its petition containing two causes of action, one for the sum of $136.19 on open account, and the other for $116.07 "under what is known as the floor plan of finance." This made a total of $252.26. Defendant in his answer, in effect, admitted a course of dealings over several years, but denied that he was indebted to the plaintiff in the amount sought, and stated that he was indebted to the plaintiff in the sum of $54.18, which he had before the filing of the action tendered to the plaintiff, and tendered this sum in the answer. The verdict of the jury was for the plaintiff for $54.18 admitted owing by the defendant, and the plaintiff appeals.

The first contention of the plaintiff is that the verdict is not sustained by the evidence and is contrary to the evidence. W. E. Titus testified for plaintiff and identified several exhibits containing statements of account to support plaintiff's suit. The defendant testified for himself, and we gather from his direct and cross-examination that there was virtually no dispute between him and the plaintiff as to the bulk of the items appearing on the accounts, and that the basis of defendant's controversy with plaintiff arises out of defendant's charge that two checks for $90 each given by him to the plaintiff on the 28th and 29th of May, 1937, were not credited to his account. When the total of these checks is added to the amount he tendered to the plaintiff, and some interest is considered, the total approximates the sum sought by plaintiff.

Plaintiff does not deny receiving these checks, but admits that they do not appear as specific items of credit on the open account or the notes receivable account introduced in evidence by it. However, plaintiff's witnesses called attention to a credit on the notes receivable account under date of June 5, 1937, as follows: "Checks—total cks. $232.65 —$54.51 to open account," and says, "which must have included those two checks for $90." On the other hand, defendant calls our attention to the fact that his exhibit No. 2 is apparently a machine-made duplicate of plaintiff's exhibit No. 1, except for pencil notations, and says his exhibit No. 2 was delivered to him by plaintiff's agent and bears penciled notations with respect to credit on his notes receivable account, probably based on a check of June 5th for $178.14 as received from C. I. T., a finance company with which these parties dealt. Defendant says that if this check of $178.14, which according to both exhibits was a part of the total checks of $232.65, was received from C. I. T., then plaintiff's witnesses' assumption that the total of checks shown on that date must have included the two $90 checks sent by defendant is wholly baseless. In answer to this, plaintiff insists that the notation appearing on defendant's exhibit No. 2 is an error and was not placed there by it in any event.

We do not deem it necessary to discuss the evidence further because we think it is reasonably clear from what we have said that there was sufficient conflict in the contention and evidence of the parties to make the matter of the amount owing by the defendant to the plaintiff a jury question, and to support the jury's verdict.

The second proposition argued by plaintiff touches upon the admission of incompetent evidence over the objection of the plaintiff.

The testimony of the plaintiff showed that there were three methods of handling items of merchandise sold to defendant: (1) Certain notes receivable given by defendant were sold to C. I. T.; (2) certain notes given by defendant were held by plaintiff; and (3) other items were carried on open account. The penciled notations appearing on plaintiff's own exhibits indicate that they related to transfers of charges and credits from one account to another and made it apparent that the dealings of these parties with C. I. T. were of importance in determining the state of the account. Technically speaking, some of the objections made were good and were at first

sustained by the trial judge, but upon further explanation in the evidence of the origin and purpose of the exhibits offered and the notations thereon, the trial court admitted them in evidence. In short, defendant testified that when this controversy came up, plaintiff suggested that he communicate with C. I. T. to seek certain information that might be explanatory of the controversy between plaintiff and defendant. Defendant testified that he procured such information and it was embodied in the exhibits which he offered, and on this basis the trial court admitted it, and we do not think error was committed. In this connection it is proper to say that we observe that plaintiff's own exhibits are covered with penciled notations explanatory thereof, and, although no particular objection to their being received in evidence was urged, neverthless we think that defendant had the same right to introduce exhibits bearing such notations.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur. RILEY and DAVISON, JJ., absent.